IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA SEABROOKE, <br><br> Plaintiff, <br><br> v. <br><br> THE PNC FINANCIAL SERVICES GROUP, INC., <br><br> Defendant. | Case No.  1:18-cv-79 <br><br> **COMPLAINT IN CIVIL ACTION** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW, comes the Plaintiff, Melissa Seabrooke by and through her attorney Blaire Patrick, Esq, of Kraemer, Manes, & Associates, LLC and files this Complaint Against Defendant PNC Bank, and in support of avers the following:

### Nature of the Action

This complaint alleges willful violations of the Family Medical Leave Act ("FMLA") 2601 *et seq*, when Plaintiff requested time off to assist her daughter in medical treatment. Defendant was aware of Plaintiff needed for leave protected under the Family Medical Leave Act and actively interfered and retaliated against Plaintiff from pursuing leave, and for pursing leave.

### Jurisdiction and Venue

1. This case arises under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. This Court has jurisdiction of disputes arising under the laws of the United States of America Pursuant to 28 U.S.C. § 1331.

2. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omission giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and venue is proper pursuant to 28 U.S.C. § 1391(b).

**Parties**

3. Plaintiff, Melissa Seabrooke, (hereinafter, "PLAINTIFF"), is an adult individual currently residing at 5 Faucette Court, McKean, Erie County, Pennsylvania 16426

4. Defendant, The PNC Financial Services Group, Inc. (hereinafter, "DEFENDANT"), is a Pennsylvania corporation with a registered address located at The Tower at PNC Plaza, 300 5th Avenue, Pittsburgh, Allegheny County, Pennsylvania 15222.

**Facts**

5. PLAINTIFF began her employment with DEFENDANT in February 2008 as a teller.

6. In 2014, PLAINTIFF applied for and was granted intermittent FMLA leave for her daughter, who was diagnosed with Attention Deficient Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), and Major Depressive Disorder.

7. PLAINTIFF had been on intermittent FMLA leave until her resignation in May 2017.

8. In or around January 2017, PLAINTIFF was questioned by Michele Rovnak, (hereinafter, "ROVNAK") a fellow employee for DEFENDANT and Clarice Womack (hereinafter, "WOMACK"), the Manager of Sales and Service for DEFENDANT about a personal day that she had requested.

9. This personal day in question was previously authorized by PLAINTIFF's supervisor, Joen Burns (hereinafter, "BURNS").

10. PLAINTIFF, was reprimanded by WOMACK for requesting a personal day from an employee, rather than a supervisor, despite the fact that PLAINTIFF had gotten permission from BURNS, her supervisor.

11. ROVNAK warned PLAINTIFF that she was not to go behind her back to request days off, and that her FMLA days impacted the entire branch, saying "when will all of these FMLA days end?"

12. In or around February 2017, Chris Bernatowicz (hereinafter, "BERNATOWICZ"), the regional manager, set stipulations for PLAINTIFF's FMLA days providing that:

   a. PLAINTIFF could not take Mondays, Fridays, or the first or third day of the month off as FMLA days; and

   b. PLAINTIFF was to inform ROVNAK of her days off directly.

13. Due to ROVNAK's previous remarks to PLAINTIFF about her FMLA, PLAINTIFF instead conveyed this information to BURNS.

14. PLAINTIFF told BURNS that she was uncomfortable discussing her FMLA with ROVNAK, as instructed by BERNATOWICZ.

15. On or about February 9, 2017, PLAINTIFF sent an e-mail to Employee Relations regarding being forced to discuss her FMLA with ROVNAK and subsequently, the way that ROVNAK treated her, specifically regarding PLAINTIFF'S need for FMLA.

16. Despite this e-mail, PLAINTIFF's issues were not resolved and various incidents continued to cause PLAINTIFF to feel that she was being unfairly targeted because of requested FMLA time.

17. On or about April 6, 2017, PLAINTIFF sent another email to Employee Relations and in response to that email PLAINTIFF was called into a meeting with her manager, Connie Williams (hereinafter, "WILLIAMS"), to whom PLAINTIFF explained the situation.

18. On or about April 7, 2017, PLAINTIFF scheduled a necessary, last minute appointment with her daughter's providers and requested three and one half hours of her FMLA. ROVNAK harassed her for this request so severely that WILLIAMS called and spoke to PLAINTIFF, and told her that she would have to reschedule the appointment.

19. On or about May, 4 2017, PLAINTIFF had a meeting with WILLIAMS and BERNATOWICZ, where PLAINTIFF was told that her job was on the line because of the FMLA time she was using. Furthermore, PLAINTIFF was told that if she did not keep her appointments to outside of work hours, they would not be accommodated.

20. PLAINTIFF was told that in order to get permission to use FMLA for an appointment during work hours, she would need to provide DEFENDANT with documentation that the appointment was medically necessary and that there were no other times available to schedule the appointment.

21. Furthermore, WILLIAMS and BERNATOWICZ told PLAINTIFF that they were speaking to the legal department to, "ensure that her requested days would not be covered if they did not meet the above stipulations."

22. On or about May 10, 2017, PLAINTIFF provided WILLIAMS with documentation from her daughter's doctor's office relating to her upcoming appointment for which PLAINTIFF intended to use FMLA.

23. WILLIAMS told PLAINTIFF that the documentation was not sufficient because it did not state that the date and time for the appointment was the only one available. WILLIAMS stated that PLAINTIFF would not be able to attend her daughter's upcoming appointment.

24. PLAINTIFF had another meeting with WILLIAMS and BERNATOWICZ that day where they went over each and every stipulation to her intermittent FMLA to, "make sure everyone was on the same page" and "to do what is best for business". Those stipulations were as follows:

   a. PLAINTIFF could not schedule appointments on Monday, Friday, or the first, or third of the month;

   b. PLAINTIFF could not commit to an appointment date and/or time until it was approved by a manager;

   c. All appointments must be first thing in the morning or end of the day;

   d. PLAINTIFF must get four (4) available times from the provider's office or call a manager while at the provider's office so that the manager may schedule the appointment; and

   e. PLAINTIFF must provide documentation to the manager showing that the appointment requested is medically necessary and that the appointment time and date requested is the only one available.

25. PLAINTIFF was told that if these procedures were not followed, her intermittent FMLA would not be approved, except for emergency circumstances.

26. Furthermore, at this meeting BERNATOWICZ asked PLAINTIFF with what her daughter was diagnosed.

27. Additionally, BERNATOWICZ expressed to PLAINTIFF that no one would believe her statements about PLAINTIFF's FMLA restrictions because BERNATOWICZ "always has a witness."

28. BERNATOWICZ then threatened PLAINTIFF, stating, "you do not want to mess with me. I have been with this company for years and I know the ins and outs and you are messing with the wrong person."

29. The following day, May 11, 2017, PLAINTIFF resigned from her position with DEFENDANT.

## COUNT I
### Interference in violation of the FMLA
*Family Medical Leave Act, 29 U.S.C.A. 2601, et seq.*

30. All preceding paragraphs are incorporated herein as if set forth in full.

31. PLAINTIFF worked for DEFENDANT for more than one year prior to her need for FMLA leave.

32. PLAINTIFF worked more than 1250 hours in the previous year prior to her need for FMLA leave.

33. DEFENDANT employees more than 50 people.

34. DEFENDANT was on notice that PLAINTIFF needed FMLA leave to take care of her daughter, and such leave qualified for FMLA protection

35. PLAINTIFF was placed on several restrictions regarding her ability to take approved FMLA leave in direct violation of 29 U.S.C.A. 2601, *et seq.*, including but not limited to:

   a. Restrictions to the date and time permitted to take FMLA;

   b. Restrictions requiring documented proof of medical necessity; and

   c. Restrictions requiring managerial approval of all appointments taken under FMLA.

36. PLAINTIFF was told that she would be terminated if she did not follow the restrictions placed on her FMLA.

37. PLAINTIFF was forced to resign because of the restrictions placed upon her FMLA leave.

38. PLAINTIFF was entitled to job protection by way of her FMLA needs.

39. PLAINTIFF was damaged by DEFENDANT's Actions.

## Count II
### Retaliation in violation of the FMLA
*Family Medical Leave Act, 29 U.S.C.A. 2601, et seq.*

40. All preceding paragraphs are incorporated herein as if set forth in full.

41. DEFENDANT retaliated against PLAINTIFF for utilizing FMLA to care for her daughter, by placing restrictions on PLAINTIFF's ability to take FMLA and threatening her.

42. PLAINTIFF invoked her FMLA right to leave on numerous occasions.

43. PLAINTIFF suffered adverse employment actions by her supervisors forcing her to get approval before taking leave, only being permitted to take leave on certain times, and being threatened as a result of PLAINTIFF taking leave.

44. DEFENDANT's actions are causally related to PLAINTIFF's invocation of her rights given the short amount of time between PLAINTIFF's invoking her FMLA rights, and DEFENDANT's retaliatory actions.

WHEREFORE, PLAINTIFF, Melissa Seabrooke, respectfully requests this honorable court to enter judgment in her favor and against that of DEFENDANT, and to award PLAINTIFF

economic and liquidated damages, costs of suit, attorney's fees, and any and all further relief as this Court may justify.

Respectfully submitted,

/s/ Blaire Patrick
Blaire Patrick, Esq.
**KRAEMER, MANES & ASSOCIATES, LLC**
**ID No. 318332**
U.S. Steel Tower
600 Grant Street, Suite 4875
Pittsburgh, PA 15219
412.626.5595 (p)
412-283-6050(f)
bp@lawkm.com

*Attorney for Plaintiff*
